In re the Petition for the CREATION OF SOUTH–WEST LAKE MAXIN-KUCKEE CONSERVANCY DISTRICT.

John Crist, Appellant–Intervenor,

v.

South–West Lake Maxinkuckee Conservancy District, Appellee.

No. 50A04–0612–CV–694.

Court of Appeals of Indiana.

Oct. 22, 2007.

Stanley F. Wruble III, Leone Halpin, LLP, South Bend, IN, Attorney for Appellant.

Ronald D. Gifford, Wyland, Humphrey, Wagner, Gifford & Clevenger, LLP, Plymouth, IN, Attorney for Appellee.

## OPINION

BAKER, Chief Judge.

Appellant-intervenor John Crist[1] appeals the trial court's order creating the South–West Lake Maxinkuckee Conservancy District (the Conservancy District). Specifically, Crist argues that (1) the trial court erred by withdrawing various signatures from the petition opposing the creation of the Conservancy District, (2) the Conservancy District is not contiguous as required by Indiana Code section 14–33–3–1, (3) the trial court erred by not specifically defining one of the seven districts within the Conservancy District, and (4) the trial court's finding that the Conservancy District would promote public health is clearly erroneous. Although we conclude that the trial court erred by withdrawing ten signatures from the remonstrators' petition, that petition still does not have the amount of signatures that are required to dismiss the petitioners' petition. Finding no other error, we affirm the judgment of the trial court.

## FACTS

On September 15, 2003, a group of freeholders in Marshall County (the petitioners) filed a petition with the trial court for the creation of a conservancy district for property surrounding the southwest portion of Lake Maxinkuckee. The petition specified that the purpose of the Conservancy District was to "provide for the collection, treatment, and disposal of sewage and other liquid wastes from the homes and other properties in the immediate vicinity." Appellant's App. p. 9.

On December 3, 2003, the trial court held a hearing and found that the petitioners' petition satisfied Indiana Code section 14–33–2–16.[2] Therefore, pursuant to Indiana Code section 14–33–2–17, the trial court entered an order referring the petition to the Natural Resources Commission (NRC). The NRC held public hearings on July 22, 2004, and November 16, 2004, and filed a report with the trial court on November 18, 2004. The NRC report summarized the evidence submitted at the public hearings and ultimately found that "a centralized sewage collection and treatment system appears to be necessary" and "public health will be served immediately or prospectively by providing for a sewage collection and disposal system." Id. at 27, 31.

After receiving the NRC report, the trial court initially set a hearing for March 31, 2005. The freeholders opposed to the creation of the Conservancy District (the remonstrators) filed petitions opposing its creation on March 18 and March 28, 2005. Crist, on behalf of the remonstrators, and the petitioners both filed requests with the trial court to determine the validity of the signatures on both petitions, and the March 31 hearing date was rescheduled.

The trial court held a hearing to determine the validity of the signatures on July 6, 2005, and ordered the parties to submit briefs in support of their respective posi-

---

1. Crist filed a petition with the trial court to intervene in the underlying proceedings on behalf of the freeholders opposed to the creation of the Conservancy District.

2. Indiana Code section 14–33–2–16 sets forth the requirements for a conservancy district

petition, specifically, that the petition complies with the form detailed in Indiana Code section 14–33–2–4 and contains the necessary signatures—here, signatures from at least 30% of the freeholders pursuant to section 14–33–2–2.

tions. The trial court issued an order on January 17, 2006, finding:

A question was raised during the course of the hearing regarding the ability and timing of one originally signing the Petition in Opposition to The Creation of The Conservancy District to withdraw their signature. Included in the April 11, 2005 filing by the Petitioners was an indication that ten (10) of the individuals who had signed the Petition in opposition to the formation of the district had, in essence, changed their minds and were withdrawing their signatures. The Respondents argue that a Petition to Withdraw Signatures cannot be filed any later than the fifth day before the hearing day initially ordered by the Court after the receipt of the Commission's Report. In this matter the hearing on the Commission's Report has been continued without date and the Court is addressing, essentially, preliminary matters. The Court finds that the request made on behalf of ten (10) individuals to withdraw their signatures from the Petition in Opposition should be GRANTED and their names stricken from the Petition in Opposition.

The Court also recognizes that a question exists as to the date that should be utilized in determining who is a freeholder that may sign the Petition. The Court determines that in signing the original Petition one had to be a freeholder as of September 15, 2003. The Petition filed that date established that there were one hundred fifty-nine (159) freeholds involved in the proposed conservancy district. To validly sign the Petition in Opposition, one had to be a freeholder as of the date the Petition in Opposition was filed, either March 18, 2005 and/or March 28, 2005.

Because of the confusion that question raised, the Court will allow those opposed to the creation of the district the opportunity to clarify or correct the signatures filed in opposition to the proposed creation of a conservancy district. However, the signatures that may be clarified must relate to the same parcels of property or freeholds that were intended or attempted to be included in the Petition opposing the creation when filed March 18 and March 28, 2005.

Appellant's App. p. 59–62.

The trial court held a hearing on May 16, 2006, and issued an order on August 15, 2006, creating the Conservancy District and dividing it into seven districts. In relevant part, the trial court found that

A. South–West Lake Maxinkuckee Conservancy District appears to be necessary;

B. South–West Lake Maxinkuckee Conservancy District holds promise of economic and engineering feasibility;

C. That the public health will be served immediately and prospectively by the establishment of South–West Lake Maxinkuckee Conservancy District;

D. That South–West Lake Maxinkuckee Conservancy District and the boundaries thereof are described in the Petition, will cover and serve a proper area;

\* \* \*

J. That the geographic boundaries of South–West Lake Maxinkuckee Conservancy District should be as described in the Petition for creation [ ] except [for] the properties located at [lists various properties to be excluded from the conservancy district for purposes of contiguity]. In addition, it appears that sewer services may also be available through the Town of Culver to the properties located at [lists seven properties]. The owners of those properties shall be required to make an election by September 15, 2006 as to whether or not they

wish to utilize the sewer services of the Town of Culver or to be a part of the South–West Lake Maxinkuckee Conservancy District. Any property electing to use the Town's services shall be eliminated from the Conservancy District.... Counsel shall also furnish a description of the proposed District VII after all elections are made and the properties remaining in the Conservancy District are known.

Appellant's App. p. 79–83. Crist now appeals.

## DISCUSSION AND DECISION

### I. Jurisdiction

■ Both parties believe that our Supreme Court has jurisdiction over this appeal pursuant to Indiana Code section 14–33–2–28, which provides that an order establishing a conservancy district "may be appealed to the supreme court within thirty (30) days." Our Supreme Court has never cited section 14–33–2–28 as a source of authority for reviewing a direct appeal.

■ Indiana Appellate Rule 4 provides that our Supreme Court has both mandatory and discretionary jurisdiction:

1) Mandatory review. The Supreme Court shall have mandatory and exclusive jurisdiction over the following cases:

(a) Criminal Appeals in which a sentence of death or life imprisonment without parole is imposed under Ind. Code § 35–50–2–9 and Criminal Appeals in post conviction relief cases in which the sentence was death.

(b) Appeals of Final Judgments declaring a state or federal statute unconstitutional in whole or in part.

(c) Appeals involving waiver of parental consent to abortion under Rule 62.

(d) Appeals involving mandate of funds under Trial Rule 60.5(B) and Rule 61.

(2) Discretionary Review. The Supreme Court shall have discretionary jurisdiction over cases in which it grants Transfer under Rule 56 or 57 or Review under Rule 63.

An appellant seeking to have the Supreme Court exercise discretionary jurisdiction over a direct appeal pursuant to Rule 4(A)(2) must file a motion with our Supreme Court pursuant to Appellate Rule 56. *See, e.g., City of Carmel v. Certain Sw. Clay Twp. Annexation Territory Landowners,* 868 N.E.2d 793, 796 (Ind. 2007).

Appellate Rule 5 provides that "[e]xcept as provided in Rule 4, the Court of Appeals shall have jurisdiction in all appeals from Final Judgments of Circuit, Superior, Probate, and County Courts, *notwithstanding any law, statute or rule providing for appeal directly to the Supreme Court of Indiana.*" (Emphasis added). Here, the trial court's order establishing the Conservancy District is a final judgment. Crist did not file a motion seeking discretionary review with the Supreme Court pursuant to Rule 56, and this case does not qualify for mandatory Supreme Court review pursuant to Rule 4(A)(1). While we agree that Indiana Code section 14–33–2–28 clearly states that an appellant can appeal the trial court's order establishing a conservancy district directly to our Supreme Court, Rule 5(A) trumps that statute and gives our court jurisdiction. *See* Ind.Code § 34–7–1–3 (providing that rules adopted by the Supreme Court govern and "all laws in conflict with the supreme court's rules have no further force or effect"). Therefore, we hereby exercise jurisdiction over Crist's direct appeal pursuant to Appellate Rule 5(A) and turn to the merits of the case.

### II. Signatures

Crist asserts that the remonstrators' petition originally contained signatures from

85 of the 159 freeholders listed in the proposed conservancy district, or 53.5%. Appellant's App. p. 4–5. Therefore, pursuant to Indiana Code section 14–33–2–15, Crist argues that the trial court erred as a matter of law by not dismissing the petitioners' petition because the remonstrators' petition contained more than 51% of the freeholders' signatures. While Crist acknowledges that the trial court ultimately withdrew fourteen signatures from the remonstrators' petition, lowering the percentage below 51%, he argues that the removal was erroneous.

### A. Ten Freeholders' Signatures

■ Crist first argues that the trial court erred by striking the signatures of ten freeholders who changed their minds after signing the remonstrators' petition. Specifically, Crist argues that those ten freeholders filed untimely motions to strike and, thus, the trial court erred as a matter of law by withdrawing their signatures.

Indiana Code section 14–33–2–15 provides that

a) A petition against the establishment of a district may be presented to the court:

(1) at the hearing on a petition; or

(2) at any time thereafter before the fifth day before the hearing day initially ordered by the court after the receipt of the commission's report.

(b) If the court finds a petition against the establishment of a district contains the signatures of:

(1) at least fifty-one percent (51%) of the freeholders in the proposed district; or

(2) the freeholders who own at least sixty-six and two-thirds percent (66 2/3%) as determined by the assessed valuation of the real property in the proposed district;

the court shall dismiss the petition for the establishment of the district.

(c) Sections 3 and 6 of this chapter apply to this section.

(d) *The fifth day before the hearing date initially ordered by the court after the receipt of the commission's report is the last date on which a petition to withdraw signatures may be filed.*

(Emphasis added). After receiving the NRC report, the trial court initially scheduled a hearing for March 31, 2005. In accordance with section 14–33–2–15(a), the remonstrators timely[3] filed petitions opposing the creation of the Conservancy District on March 18 and 28, 2005.

Crist argues that the trial court erred as a matter of law by allowing ten freeholders to withdraw their signatures from the remonstrators' petition. While these ten freeholders initially signed the remonstrators' petition, they "changed their minds" and petitioned the trial court to remove their signatures from that petition on April 11, 2005. Appellant's App. p. 60. Crist argues that this request was untimely because the last day to petition to remove signatures was March 28, 2005, pursuant to Indiana Code section 14–33–2–15(d). On the other hand, the petitioners argue that section 14–33–2–15(d) only creates a deadline for withdrawing signatures from the *petitioners'* petition to establish a conservancy district, not the *remonstrators'* petition.

The parties' arguments compel us to construe Indiana Code section 14–33–2–15(d) for the first time. The standard of review for questions of statutory interpretation is well established:

---

**3.** The fifth day before the scheduled hearing fell on Saturday, March 26, 2005; thus, the remonstrators timely filed their second petition on Monday, March 28, 2005.

When deciding questions of statutory interpretation, appellate courts need not defer to a trial court's interpretation of the statute's meaning. Rather, we independently review the statute's meaning and apply it to the facts of the case under review. If a statute is unambiguous, we may not interpret it, but must give the statute its clear and plain meaning. If a statute is ambiguous, however, we must ascertain the legislature's intent and interpret the statute so as to effectuate that intent. A statute is ambiguous where it is susceptible to more than one interpretation.

*Elmer Buchta Trucking, Inc. v. Stanley,* 744 N.E.2d 939, 942 (Ind.2001).

Indiana Code section 14–33–2–15(d) provides that "[t]he fifth day before the hearing date initially ordered by the court after the receipt of the commission's report is the last date on which a petition to withdraw signatures may be filed." This language is ambiguous because it is unclear whether subsection (d) applies to the petitioners' petition for or the remonstrators' petition against the establishment of a conservancy district, or both. Because the statute is ambiguous, we must ascertain the legislature's intent and interpret the statute to effectuate that intent.

Indiana Code section 14–33–2–15(d) is the only applicable section in the Establishment Chapter of the Conservancy District Article that refers to the withdrawal of names from a petition. While the subsection falls under the section titled "Petition against establishment of a district[,]"

subsection (d) broadly refers to withdrawing signatures from "a petition." I.C. § 14–33–2–15. This imprecise language allows for various interpretations because the legislature refers to both the petitioners' and the remonstrators' requests as "petitions" throughout Chapter 2. *See, e.g.,* I.C. §§ 14–33–2–1, –15. If we interpret section 14–33–2–15(d) to apply to only one type of petition, there will be no statutory guidance for withdrawing signatures from the other type.

■ By enacting section 14–33–2–15(d), the legislature intended to establish a deadline by which a freeholder must request that his signature be removed from a petition. Essentially—and rationally—the General Assembly has said that there must be a fixed point in time at which all participating freeholders must make up their minds and choose a side. This deadline is necessary so that the trial court can determine whether a hearing is needed at all.[4] To best effectuate the legislature's intent, we hold that Indiana Code section 14–33–2–15(d) establishes a deadline for petitioning the trial court to withdraw signatures from either the petitioners' or the remonstrators' petition.

In this case, the trial court initially scheduled a hearing for March 31, 2005, after receiving the NRC report.[5] Thus, the freeholders had until Monday, March 28, 2005, to petition the trial court to withdraw their names from either of the petitions. Because the freeholders at issue herein did not request to remove their names from the remonstrators' petition

---

4. If the remonstrators constitute 51% of the freeholders or own at least 66 2/3% of the land in the proposed district, the trial court must dismiss the petitioners' petition. I.C. § 14–33–2–15(b).

5. While we recognize that the March 31, 2005, hearing date was ultimately vacated and the hearing was actually held on May 16,

2006, Indiana Code section 14–33–2–15(d) establishes the signature-withdrawal deadline for five days before "the hearing date *initially ordered* by the court after the receipt of the commission's report." (Emphasis added). Thus, the fact that the initial hearing date was vacated is of no moment.

until April 11, 2005, we conclude that their requests were untimely. Consequently, the trial court erred as a matter of law by removing ten signatures from the remonstrators' petition.

 We pause to emphasize an important point. While we interpret Indiana Code section 14–33–2–15(d) to establish a deadline for withdrawing names from either of the petitions, this deadline only applies to freeholders who change their minds and want the petitions to reflect such a change. We are *not* holding that an illegitimate signature cannot be challenged and withdrawn after the 14–33–2–15(d) deadline expires. For example, if a party wants to argue that a signature is invalid because the signor is not a freeholder within the definition of Indiana Code section 14–33–2–3, that challenge can be made after the 14–33–2–15(d) deadline because it is an attack on the signor's legitimacy. Thus, even after the 14–33–2–15(d) deadline expires, parties can still petition the trial court to remove signatures based on their legitimacy.[6]

### B. Four Freeholders' Signatures

 Crist next argues that the trial court erred by striking four additional signatures from the remonstrators' petition because, although these individuals were not freeholders when the remonstrators' petition was filed, they were freeholders when the petitioners' petition was filed on September 15, 2003. When presented with this argument, the trial court found that

> The Court determines that in signing the original Petition one had to be a freeholder as of September 15, 2003. The Petition filed that date established that there were one hundred fifty-nine

(159) freeholds involved in the proposed conservancy district. To validly sign the Petition in Opposition, one had to be a freeholder as of the date the Petition in Opposition was filed, either March 18, 2005, and/or March 28, 2005.

Appellant's App. p. 60. While the record does not directly reflect this action, both parties agree that the trial court struck an additional four signatures from the remonstrators' petition after it determined that these individuals were not freeholders on March 18 or March 28, 2005.

The parties direct us to Indiana Code section 14–33–2–16 and highlight subsection (d):

> d) The determination of:
> (1) the number of freeholds; and
> (2) the necessary number and identity of freeholders;
> shall be made as of the date of filing a petition. If the petition as of that date bears the necessary number of signatures, the petition may not be dismissed because petitioners withdraw signatures that reduces the number of signatures below the required amount unless the withdrawals constitute more than fifty percent (50%) of the signers as of the date of filing.

Crist argues that section 14–33–2–16(d) establishes the identity of all freeholders as of the date the petitioners' petition is filed. Thus, Crist argues that it makes no difference whether an individual signing the remonstrators' petition is a freeholder at the time the remonstrators' petition is filed, as long as he was a freeholder when the petitioners' petition was filed. The petitioners argue that section 14–33–2–16(d) only applies to the petitioners' petition and that the trial court correctly concluded

---

**6.** While the Establishment Chapter of the Conservancy District Article does not stipulate a process for challenging the legitimacy of signatures, the trial court's decision in this case to hold a hearing on the matter was appropriate.

that the four individuals who were not freeholders when the remonstrators' petition was filed could not validly sign that petition.

■ Indiana Code section 14–33–2–16 generally discusses the requirements for the petitioners' petition that the trial court must evaluate to determine whether to direct the matter to the NRC. I.C. § 14–33–2–16(a) (providing that "at the hearing *on a petition for the establishment of a district* the court shall . . .") (emphasis added). Furthermore, subsection (d) contains language that is only applicable to the petitioners' petition. For example, subsection (d) commands that "the petition may not be *dismissed* because *petitioners* withdraw signatures that reduces the number of signatures below the required amount. . . ." (Emphases added). The use of the word "petitioners" and the discussion of dismissing the petition only apply to the petition filed to establish a conservancy district, not a petition filed by the remonstrators. While Chapter 2 discusses the dismissal of the petitioners' petition, it never mentions dismissing a remonstrators' petition. I.C. §§ 14–33–2–5, – 15, –26. Thus, we find that Indiana Code section 14–33–2–16(d) establishes the date that an individual is a freeholder for purposes of signing the petitioners' petition, not the remonstrators' petition.

■ We must now determine the date on which an individual must be a freeholder to validly sign the remonstrators' petition. Indiana Code section 14–33–2–15— the only statute directly discussing a petition against the establishment of a district—specifically states that section 3 of the Chapter applies to the remonstrators' petition. I.C. § 14–33–2–15(c). Indiana Code section 14–33–2–3 provides the method for determining the number of freeholds in a proposed district and explicitly refers to freeholders "owning land in the

district." Thus, to validly sign the remonstrators' petition, an individual must be a freeholder on the date the remonstrators' petition is filed. The trial court reached this conclusion and, as a result, correctly withdrew four signatures from the remonstrators' petition because those individuals were not freeholders on the date the remonstrators' petition was filed.

### C. Total Signatures

■ As noted above, the remonstrators' petition originally contained signatures from 85 of the 159 freeholders in the proposed conservancy district. While the trial court erroneously withdrew ten of those signatures from the remonstrators' petition, four of the signatures were properly removed. Thus, the remonstrators' petition contained 81 valid signatures, or 50.9% of the freeholders in the proposed district. While this number is only one-tenth of a percent less than the 51% required for the trial court to dismiss a petition, we must conclude that the remonstrators' petition did not contain 51% of the freeholders' signatures. Indiana Code section 14–33–2–15 unambiguously establishes that 51% of the freeholders' signatures are required for the trial court to dismiss the petitioners' petition, and 50.9% is not 51%. *Elmer*, 744 N.E.2d at 942 (holding that an appellate court must give a statute its clear and plain meaning when the statute is unambiguous). Therefore, we must conclude that, despite Crist's assertions to the contrary, the trial court did not err by failing to dismiss the petitioners' petition pursuant to Indiana Code section 14–33–2–15.

### III. Contiguity of Conservancy District

■ Crist argues that even if the trial court did not err by failing to dismiss the petitioners' petition, the trial court's order establishing the Conservancy District is

invalid. Specifically, Crist argues that the Conservancy District contains non-contiguous property in violation of Indiana Code section 14–33–3–1, which provides that "[a]ny area may be established as a district if each part of the district is contiguous to another part." Crist argues that the Conservancy District "is separated by approximately 1,300 foot [sic] of shoreline owned by the State of Indiana Department of Natural Resources that serves as a public boat access to Lake Maxinkuckee." Appellant's Br. p. 7. This DNR property contains a boat ramp and parking that is accessible to the public. Even though this property was not listed in the proposed conservancy district assessed by the NRC, the NRC still concluded that "[a]s proposed, all parts of the district are contiguous." Appellant's App. p. 44. The NRC report "is prima facie evidence of the facts stated in the report in all subsequent proceedings." I.C. § 14–33–2–23.

■ While we acknowledge that no appellate court has ever interpreted the contiguity provision, we conclude that the purpose of Indiana Code section 14–33–3–1 is to prevent a conservancy district from being comprised of unrelated, unconnected parcels of land. By requiring a conservancy district to be contiguous, the legislature sought to ensure that the property included in the district was related to the purpose for which the district was being established in both general nature and proximity. Because the property included in the Conservancy District is directly related to the stated purpose thereof and in close proximity and essentially contiguous thereto, we find the general purpose of the statute to be satisfied and reject Crist's arguments to the contrary.[7]

### IV. District VII

Crist argues that the trial court's order creating the Conservancy District must be reversed because it does not specifically define the property included in District VII. He contends that this violates Indiana Code section 14–33–2–27 and the Indiana Constitution.

### A. Indiana Code section 14–33–2–27

■ Indiana Code section 14–33–2–27 provides that

(a) If the court orders a district established, the court shall in the order establishing the district determine the following:

(1) The number of directors to serve on the board and the procedures for the election of the directors.

(2) *The division of the district into areas.*

(3) The time of the annual meeting of the district, which must be before March 1 each year.

(Emphasis added). The trial court's August 15, 2006, order provides that District VII "[s]hall be established after September 15, 2006, as more fully explained here after [sic]." Appellant's App. p. 82. Instead of specifically listing the freeholds in District VII, the trial court gave those seven freeholders the opportunity to opt out of the Conservancy District because the Town of Culver (the Town) had recently decided to extend sewer utilities within 300 feet of the District VII freeholds.

---

7. Crist also argues that the trial court's order was erroneous because the NRC suggested that it may be proper to consider additional nearby land not originally included in the proposed district. However, while Crist attempts to tie this argument to his contiguity argument, the NRC made this suggestion because of the proximity and similarity of that additional property. There is no evidence that the NRC believed that it was necessary to include this land for contiguity purposes.

While it is undeniable that the trial court's order does, in fact, divide the Conservancy District into "areas" as required by Indiana Code section 14–33–2–27, Crist argues that District VII is not a "definable area" and, thus, violates the statute. Appellant's Br. p. 13. The petitioners argue that Crist's argument fails because "all of those individuals who were afforded the opportunity to opt out of the [Conservancy] District instead elected to remain in the District." Appellees' Br. p. 10. However, the petitioners cite no evidence to support this assertion and we are unable to find such evidence in the record.

Nevertheless, we acknowledge the logic and justice of the trial court's decision. Specifically, the trial court only afforded the District VII freeholders an opportunity to opt out of the Conservancy District and obtain sewer utilities from the Town because the freeholders from the other six districts did not have the option to obtain sewer services from the Town—the Town had not extended utilities within 300 feet of their freeholds. Therefore, the trial court acted judiciously by treating those property owners differently, allowing them a reasonable amount of time—here, one month—to decide whether to obtain sewer utilities from the Conservancy District or the Town. The trial court's order generally defines District VII as the seven freeholds not listed in the other six districts and orders counsel to "furnish a description of the proposed District VII after all elections are made and the properties remaining the Conservancy District are known."

Appellant's App. p. 83. Given the unique circumstances of this case, we find that the trial court's description of District VII complies with Indiana Code section 14–33–2–27 and the trial court did not err as a matter of law.

### B. Due Course of Law [8]

▇▇▇▇ Crist argues that the trial court violated Article I, section 12 of the Indiana Constitution by allowing certain freeholders to opt out of the Conservancy District while not giving other freeholders that same opportunity. The Due Course of Law Clause provides that "[a]ll courts shall be open; and every person, for injury done to him in his person, property, or reputation, shall have remedy by due course in law." Crist argues that allowing certain freeholders to opt out of the Conservancy District "effectively prevented freeholders from the other [six] Districts from being heard on the merits of the important issue of whether they should be part of the Conservancy District." Appellant's Br. p. 16. While Crist argues that the non-District VII freeholders were "denied their day in Court," id. at 17, he disregards the May 16, 2006, hearing that the trial court held after receiving the NRC's report. That hearing was the remonstrators' day in court—they were represented and their concerns about the establishment of the Conservancy District were heard.

While Crist deems it unfair that the District VII freeholders were given a

---

**8.** Crist also argues that the trial court's action violates the Equal Privileges and Immunities Clause of Article I, section 23 of the Indiana Constitution, which provides that "[t]he General Assembly shall not grant to any citizen, or any class of citizens, privileges or immunities, which, upon the same terms, shall not equally belong to all citizens." Crist's argument focuses exclusively on *the trial court's* actions regarding District VII. However, our Supreme Court has explained that Section 23 analysis focuses on whether "the disparate treatment *accorded by the legislation* must be reasonably related to inherent characteristics which distinguish the unequally treated class." *Collins v. Day*, 644 N.E.2d 72, 80 (Ind.1994) (emphasis added). Because Crist does not argue that specific legislation violates Section 23, his argument fails.

month to opt out of the Conservancy District, as we have just explained, the trial court's decision was logical, fair, and supported by evidence in the record that the Town had established sewer utilities within 300 feet of the District VII freeholds. Because the freeholders from the other six districts did not have the option to obtain sewer utilities from the Town, the trial court's decision allow the District VII freeholders one month to opt out of the Conservancy District did not violate the Due Course of Law Clause of the Indiana Constitution.

### V. Public Health

Finally, Crist argues that the trial court's conclusion that the Conservancy District would serve public health was clearly erroneous. Because he asserts that the Conservancy District does not, in fact, promote public health, Crist argues that trial court should have dismissed the petitioners' petition pursuant to Indiana Code section 14–33–2–26(a).[9]

The trial court's findings and conclusions will only be set aside if they are clearly erroneous. *CSL Cmty. Ass'n v. Jennings Nw. Reg'l Util.*, 794 N.E.2d 567, 569 (Ind. Ct.App.2003). A finding or conclusion is not clearly erroneous unless the record contains no facts or inferences supporting it. *Id.*

The NRC concluded that "[t]he public health will be served immediately or prospectively by providing for a sewage collection and disposal system." Appellant's App. p. 41, 43. As support for this conclusion, the NRC cited a survey of Lake Maxinkuckee, which concluded that " 'the leachate detector survey indicates discharge of septic effluent into Lake Maxinkuckee' " and " 'a solution to present meth-

ods of sewage treatment must be found for the residents on Lake Maxinkuckee.' " *Id.* at 42 (quoting J.F. New & Associates, The *Survey of Septic Systems* 16 (1999)). As support for its conclusion, the NRC cited additional evidence from local health officials, concerned citizens, and further lake surveys. Ultimately, the NRC concluded that the "proposed treatment system will provide municipal quality services for the community. The establishment of the district for a centralized wastewater collection and treatment system *will serve the public health immediately.*" Appellant's App. p. 43 (emphasis added).

As previously noted, the NRC report "is prima facie evidence of the facts stated in the report in all subsequent proceedings." I.C. § 14–33–2–23. Therefore, the trial court's conclusion that the Conservancy District would serve the public health is not clearly erroneous and, instead, is based on the NRC's conclusions that are, in turn, based on substantive evidence. While Crist cites portions of the NRC report finding that animal waste, chemical fertilizer runoff, and pesticides also cause pollution in Lake Maxinkuckee, these findings do not change the fact that the NRC ultimately concluded that establishing the Conservancy District would promote public health. Because the trial court's conclusion is supported by ample evidence, the finding is not clearly erroneous.

### CONCLUSION

In sum, we hold that the trial court erred as a matter of law by striking ten signatures from the remonstrators' petition after those freeholders filed an untimely request to withdraw their signatures. However, the trial court properly

---

9. Indiana Code section 14–33–2–26(a) provides that if the trial court finds at the hearing that "the public health is not served immedi-ately or prospectively by the establishment of the district; the court shall dismiss the petition."

struck four signatures from the remonstrators' petition because those individuals were not freeholders when the remonstrators filed their petition. Thus, the remonstrators' petition contained 50.9% of the freeholders' signatures, which is less than the 51% that is required to dismiss the petitioners' petition pursuant to Indiana Code section 14–33–2–15. Additionally, we hold that the Conservancy District is contiguous within the meaning of Indiana Code section 14–33–3–1, the trial court adequately defined the Conservancy District areas, and the trial court's finding that the Conservancy District would serve public health is not clearly erroneous. Thus, we affirm the judgment of the trial court.

The judgment of the trial court is affirmed.

SHARPNACK, J., and RILEY, J., concur.