

I N T H E

# Court of Appeals of Indiana

In re the Establishment of the Lake of the Woods of Marshall County Conservancy District,

*Appellants-Petitioners*

v.

Mary Behrens, on behalf of the Remonstrators Against Establishment of the Conservancy District,

*Appellee-Respondent*



FILED

Feb 19 2026, 9:00 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

February 19, 2026

Court of Appeals Case No.
25A-MI-1889

Appeal from the Marshall Superior Court

The Honorable Matthew E. Sarber, Judge

Trial Court Cause No.
50D03-2308-MI-79

## Opinion by Judge Bailey

Judges Vaidik and Scheele concur.

**Bailey, Judge.**

# Case Summary

Numerous petitioners ("the Petitioners") filed a petition to establish the Lake of the Woods of Marshall County Conservancy District ("the District"). Mary Behrens, on behalf of those opposed to the District ("the Remonstrators"), filed a petition to dismiss the Petitioners' petition. The trial court granted the Remonstrators' petition and dismissed the Petitioners' petition. The Petitioners now appeal and present four issues for our review, which we consolidate and restate as whether the court clearly erred when it dismissed the petition to establish the District. We affirm.

# Facts and Procedural History

On August 11, 2023, the Petitioners, who are freeholders within Marshall County, filed a petition for the creation of the District ("the District Petition"). The Petitioners asserted that the territory to be included in the District would include "[a]ny and all parcels of real estate having frontage on Lake of the Woods and/or the channels associated therewith." Appellants' App. Vol. 2 at 30. The Petitioners also stated that the District would be established for the purposes of "improving and maintaining the quality of Lake of the Woods through strategies designed to enhance and improve water quality, improving

drainage, [and] flood prevention and control[.]" *Id.* The District Petition included twelve counterparts, each of which included signatures of the Petitioners who supported the establishment of the District and either their addresses or parcel numbers.

[3]  On October 11, the Marshall County Auditor ("the Auditor") submitted an affidavit in which she stated that the District Petition contained 152 names of "freeholders within the boundaries of the proposed" District, that there were 270 freeholders within the boundary, and that the signatures obtained by the Petitioners represented 56.3% of the freeholders within the proposed boundary. *Id.* at 118-19. Following an initial hearing on the District Petition, the court found that the Auditor's report "serve[d] as *prima facie* evidence" that the Petitioners had acquired the minimum number of signatures needed to proceed. *Id.* at 180. Then, finding that the Petitioners had satisfied all statutory notice requirements, the court referred the District Petition to the Natural Resources Commission of the Department of Natural Resources ("the Commission").

[4]  On July 24, 2024, the Commission submitted its report. At the conclusion of the report, the Commission "recommend[ed] the establishment of the proposed [District] upon amendment of the" District Petition to include an additional stated purpose and the inclusion of "a detailed map of the proposed district that clearly outlines the complete boundaries of the district, including the lake itself and/or the channels associated therewith and all parcels of real estate having frontage on [the lake] and/or the channels associated therewith, proving the contiguous nature of the district." *Id.* at 202.

[5] On August 6, Behrens filed a notice with the court that the Remonstrators intended to file a petition against the formation of the District ("the Opposition Petition") and that there were 197 signatures in support of the Opposition Petition. The same day, the Remonstrators submitted the Opposition Petition, which included a large number of counterparts containing the names and signatures of freeholders who were against the proposed District as well as their addresses or parcel numbers.

[6] On September 18, the Auditor submitted a letter to the court stating that there were "[q]uestionable" signatures on the Opposition Petition. Appellants' App. Vol. 4 at 30. Specifically, she identified fourteen signatures that were "not of the deeded owner," were for properties that were owned by a trust or LLC "with no paperwork to verify if the person signing" is part of the trust or LLC, or were "duplicate signatures." *Id.* (bold removed). The Auditor also identified two signatures from the owners of parcels "that are not on the lake." *Id.* at 31 (bold removed). Behrens responded to the Auditor's letter and provided documentation to show that seven of the challenged signatures were appropriate. She also included five additional signatures in support of the Opposition Petition.

[7] On November 14, the Petitioners filed an amended District Petition, with supporting exhibits, including the following map:



*Id.* at 83. In addition, they filed a response to the Opposition Petition and alleged that the Opposition Petition lacked enough signatures and therefore "fail[ed] to meet the necessary thresholds to discharge or dismiss the Petition to Establish the Conservancy District." *Id.* at 89. The Petitioners attached documents that contained signatures of individuals who "revoke[d]" their signatures on the Opposition Petition. *Id.* at 91.

[8]     Behrens then filed a request for an Auditor's Report stating that she had submitted evidence to support seven of the sixteen questioned signatures and added five more signatures in opposition to the District. She further stated that, while the Petitioners submitted twenty signatures of people who purportedly revoked their opposition, "at least five of these people never were included on the opposition to the" District, many of the other signatures "are illegible" and there are "at least two duplicates." *Id.* at 99. And Behrens asserted that she had submitted "far more" than the 138 signatures needed for the District Petition to be dismissed and asked the Auditor for an "accounting of the signatures[.]" *Id.*

The court issued an order requiring the Auditor to "review their records and update their affidavit[.]" *Id*. at 111. The Auditor "referenced" and "review[ed]" a spreadsheet by an individual named Michael Nate and "discuss[ed]" the spreadsheet with him, and the Auditor "agree[d] with the numbers he has." *Id*. at 124. And she stated that, even if she were to remove certain names "from the list of those in favor" of the District Petition it would not reduce the number to under 50%.

[9] On January 22, 2025, the court held a hearing at which the parties presented oral argument. At the hearing, the parties agreed that the court needed "to make the requisite finding of whether [the Opposition Petition] bears the sufficient number of signatures or not[.]" Tr. Vol. 2 at 6. They further agreed that, if the Opposition Petition contained enough signatures, the court would be required to dismiss the District Petition but that, if it did not, then the "Conservancy District would be approved." *Id*. The court then ordered the parties to submit briefs consisting of their arguments and "an accounting of the signatures on the petition against establishment of the [District]." Appellants' App. Vol. 4 at 126.

[10] In Behrens' brief in support of the Opposition Petition, she alleged that there were 270 freeholders in the proposed district and that at least "140 have signed the Opposition," which equated to 51.85%. *Id*. at 128 (bold removed). She further asserted that the spreadsheet on which the Auditor had based her updated report "include[d] properties *not* having frontage" on the lake or channels "and exclude[d] properties *with* frontage" on the lake or channels. *Id*.

at 134 (emphases in original). And she again argued that there were various "problems" with the "alleged revocations" submitted by the Petitioners. *Id*. at 140.

[11] The Petitioners responded and asserted that the Remonstrators had "fail[ed] to establish sufficient valid signatures." Appellants' App. Vol 8 at 44 (bold removed). In particular, the Petitioners asserted that several signatures did "not qualify by the plain language of the statute," and that, if those were removed, then the Remonstrators had only 106 signatures in opposition, which placed the Remonstrators "thirty-two (32) signatures short" of the 51% that was necessary to defeat the creation of the District. *Id*. at 46-47.

[12] On June 30, the trial court issued its findings of fact and conclusions thereon. In particular, the court found that "Petitioners' evidence does not sufficiently establish or support the boundaries of [the District.]" Appellants' App. Vol. 2 at 21. The court further found that the Petitioners' spreadsheets "do not establish that the named properties are 'parcels of real estate having frontage on Lake of the Woods and/or the channels associated therewith'" and that "[r]eferences on the spreadsheet to 'on water,' 'off water,' or 'channel' are insufficient to establish the boundaries[.]" *Id*. Rather, the court found that "Remonstrators' evidence demonstrates certain properties . . . are not included in the definition of [the District], nor can readily be identified on the non-descript map of [the] Petitioner[s] for inclusion in [the District] definition." *Id*. And the court found that the Remonstrators had secured 140 signatures, which represented 51.85% of the freeholders in the proposed District. Based on those findings, the court

concluded that the Remonstrators had met their burden to demonstrate that they had secured enough signatures against the proposed District and dismissed the District Petition. This appeal ensued.

## Discussion and Decision

[13] The Petitioners appeal the trial court's order dismissing the District Petition. In its order, the trial court entered findings of fact and conclusions thereon. On appeal, those findings and conclusions "will only be set aside if they are clearly erroneous." *Crist v. South-West Lake Maxinkuckee Conservancy Dist. (In re the Petition for the Creation of South-West Lake Maxinkuckee Conservancy Dist.)*, 875 N.E.2d 222, 234 (Ind. Ct. App. 2007), *trans. denied*. A finding or conclusion is not clearly erroneous unless the record contains no facts or inferences supporting it. *Id.*[1] Further, in conducting our review, "we cannot reweigh the evidence[.]" *Dallas v. Cessna*, 968 N.E.2d 291, 296 (Ind. Ct. App. 2012). Rather, we will reverse the judgment of the trial court only upon a showing of clear error, which is "'that which leave us with a definite and firm conviction that a mistake has been made.'" *Masters v. Masters*, 43 N.E.3d 570, 575 (Ind. 2015)

---

[1] In their principal brief on appeal, the Petitioners contend that the Opposition Petition was a motion to dismiss under Indiana Trial Rule 12(B), which the court then treated as a motion for summary judgment by considering matters outside the pleadings. As such, the Petitioners contend that we should review this appeal under the standard for an appeal from the grant of summary judgment. *See* Appellants' Br. at 24-26. However, we agree with the Remonstrators that there is nothing in the relevant statutes—Indiana Code Chapter 14-33-2—"to suggest that a petition against the establishment of a district . . . should be treated as a motion to dismiss under" Trial Rule 12. Appellee's Br. at 28. And the Petitioners do not argue otherwise in their Reply Brief.

(quoting *Egly v. Blackford Cnty. Dep't of Pub. Welfare*, 592 N.E.2d 1232, 1235 (Ind. 1992)).

[14] On appeal, the Petitioners specifically contend that the trial court erred when it dismissed the District Petition based on a finding that the Remonstrators had met their burden with regard to the Opposition Petition. Petitions against the establishment of a conservancy district, like the Opposition Petition, are governed by Indiana Code Section 14-33-2-15. That statute provides, in relevant part, that, if the court "finds a petition against the establishment of a district contains the signatures of . . . at least fifty-one percent (51%) of the freeholders in the proposed district[,]" then the court "shall dismiss the petition for the establishment of the district[.]" Ind. Code § 14-33-2-15(b).

[15] The Petitioners contend that the Remonstrators "still did not carry the burden to establish the [Opposition P]etition had 51% of the proposed freeholders." Appellants' Br. at 28. Indiana Code Section 14-33-2-3 provides:

> To determine the number of freeholds in the proposed district and the number or proportion of freeholders owning land in the district qualified to sign a petition for establishment, the following apply:
>
> > (1) Only one (1) freeholder's signature may be counted for any one (1) freehold. If a freehold is held in joint title, only one (1) freeholder's signature may be counted and it may be the signature of any one (1) of the freeholders owning the freehold in joint title. If a given freeholder qualifies as set forth in this section for at least two (2) freeholds, the freeholder's signature shall be counted for each freehold.

(2) One (1) or more tracts of land owned solely by only one (1) freeholder constitute one (1) freehold.

(3) One (1) or more tracts of land owned in joint title by at least two (2) identical freeholders constitute one (1) freehold. However, if one (1) of the freeholders owning the freehold in joint title is a different or additional person, each freehold in joint title among nonidentical persons constitutes a separate and additional freehold.

(4) Subject to subdivisions (1), (2), and (3), if:

> (A) a petition for the establishment of a district is filed by a municipality by ordinance adopted by the municipality's legislative body; or

> (B) the municipality by ordinance has joined in a petition for inclusion in whole or part in the proposed district;

each freeholder in the area of the municipality that is in the proposed district is counted as a signatory to the petition. However, if a freeholder in the area of the municipality that is in the proposed district, after the filing of the petition for the establishment of the district, files a petition against the establishment of the proposed district, the number of freeholders considered and counted as signatories to the petition must be reduced by the number of freeholders in the area of the city that is in the proposed district filing a petition against the establishment of the district.

(5) Private corporations owning land in the proposed district may sign the petition by any officer authorized by

the corporation. The officer's signature is prima facie evidence of the officer's authorization to sign the petition.

[16] Here, the trial court determined that the total number of freeholders in the proposed District was 270. Thus, in order for the Remonstrators to meet their burden under Indiana Code Section 14-33-2-15(b) and obtain 51% of the signatures, the Opposition Petition needed to contain at least 138 signatures. The Petitioners argue that the Remonstrators failed to meet that burden.

[17] Specifically, the Petitioners first assert that their District Petition contained 152 signatures and that 22 people subsequently "'switched' petitions" to become in favor of the proposed District, which resulted in 174 signatures in favor of the District Petition. Appellants' Br. at 30. And they acknowledge that two people "withdrew their names from the list of those in favor." *Id*. As such, the Petitioners contend that the "Remonstrators were limited at that point to at most 98 signatures (270 - 174 = 96 + 2 = 98) of the freeholders." *Id*.

[18] That argument misses the mark. Petitioners start their calculation based on the number of signatures in favor of the District Petition and work backwards from there. But the number of signatures on the District Petition is irrelevant.[2] Instead, the appropriate question is whether the Opposition Petition had at least 138 signatures. *See* I.C. § 14-33-2-15(b). Thus, the only relevant documents are

---

[2] Indeed, it is clear that freeholders changed sides during the proceedings, making the number of signatures on the original District Petition less reliable.

the Opposition Petition and all of its counterparts and any subsequent document either adding signatures thereto or removing signatures therefrom.

[19] Still, Petitioners contend that the Remonstrators did not obtain the requisite number of signatures because the Remonstrators added certain properties they believed should be included and removed certain properties they believed should be excluded, which improperly "restrict[ed] and expand[ed] the boundaries of the district to enlarge the number of freeholders[.]" Appellants' Br. at 31. And Petitioners contend that, despite that addition and subtraction of properties, they did not change the overall number of freeholders from 270. Moreover, the Petitioners maintain that the Remonstrators failed to identify "each freeholder within the new boundary that is opposed to the creation of" the District. *Id*. at 37.

[20] During the underlying proceedings, the Remonstrators filed the Opposition Petition, which contained well over one hundred counterparts.[3] And each of those counterparts contained multiple signatures and addresses/parcel numbers. In addition, both sides submitted documents to indicate that freeholders had changed their positions, and each party made accusations that the other party had wrongfully included or excluded properties or that the other party had wrongly counted signatures.

---

[3] The Opposition Petition contained counterparts numbered 1-131, 201, and 202, as well as unnumbered counterparts.

[21] However, we are unable to discern which addresses are or are not included in the District to ascertain whether the Petitioners are correct in stating that the Remonstrators expanded or restricted the District's boundaries. Indeed, the map provided by the Petitioners outlining the District is vague at best and provides no details regarding addresses or parcel numbers. As such, we have no way of knowing whether a signature for the Opposition Petition—or for the District Petition for that matter—is a proper signature of a freeholder within the District. Without more, all we have are hundreds of pages of documents with hundreds of signatures of people that may or may not be of appropriate freeholders.

[22] The trial court, as factfinder, parsed all the data, looked at the boundaries of the District, determined which addresses fell within or outside that boundary, counted the number of signatures in opposition, concluded which of those signatures were proper, and determined that the Remonstrators had obtained 140 signatures, which was two more than what they needed for the District Petition to be dismissed. Stated differently, the court considered the evidence presented by both sides but gave more weight to the Remonstrators' evidence than that of the Petitioners. Based upon that determination by the trial court, it found that the documented signatures provided by the Remonstrators exceeded the statutory minimum of 51%, and from our review, we cannot say that the

court clearly erred when it found in favor of the Remonstrators and dismissed the District Petition.[4]

## Conclusion

[23] The trial court's findings are supported by the evidence. As such, the court did not clearly err when it determined that the Opposition Petition contained enough signatures and dismissed the District Petition. We therefore affirm the trial court.

[24] Affirmed.

Vaidik, J., and Scheele, J., concur.

ATTORNEY FOR APPELLANT

Colby A. Barkes
Blachly, Tabor, Bozik & Hartman, LLC
Valparaiso, Indiana

ATTORNEYS FOR APPELLEE MARY BEHRENS

Todd J. Janzen
Brianna Schroeder
Janzen Schroeder Agricultural Law LLC
Indianapolis, Indiana

---

[4] Because we affirm the dismissal of the District Petition based on the number of signatures, we need not address the Petitioners' arguments regarding the Remonstrators' ability to challenge the sufficiency of the pleadings, the boundaries of the District, or the sufficiency of compliance with the Commission.